**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ADRIANA AVILÉS; ISAAC SERRANO MUÑIZ; JAMES A. HARNAR; JOHN A. NAPOLI ROMERO; JAY GREVERS; LUIS W. PROSPER; DR. GOAR BLANCO, ON BEHALF OF THEMSELVES AND THE PUTATIVE CLASS<br><br>**Plaintiffs**<br><br>**v.**<br><br>SOL MELIÁ V.C. PUERTO RICO CORP., A PUERTO RICO ENTITY; COCO CONDOMINIUM 1, LCC, A PUERTO RICO ENTITY; MELIÁ HOTELS INTERNATIONAL S.A., A SPANISH ENTITY<br><br>**Defendants** | Civil No.: 3:20-cv-01146 (GAG)<br><br><br>RE:  DECLARATORY AND INJUNCTIVE RELIEF; BREACH OF CONTRACT; LAW NO. 204 OF DECEMBER 28, 2016, PUERTO RICO VACATIONAL PROPERTY LAW; ACT 118, CONSUMER CLASS ACTION STATUTE, P.R. LAWS ANN. TIT. 32 § 3341 |

<u>**AMENDED CLASS ACTION COMPLAINT**</u>

**TO THE HONORABLE COURT:**

      **COME NOW**, Plaintiffs **ADRIANA AVILÉS; ISAAC SERRANO MUÑIZ; JAMES A. HARNAR; JOHN A. NAPOLI ROMERO; JAY GREVERS; LUIS W. PROSPER; DR. GOAR BLANCO, ON BEHALF OF THEMSELVES AND THE PUTATIVE CLASS**, through the undersigned counsel and very respectfully STATE and PRAY as follows:

### I.  <u>NATURE AND BRIEF DESCRIPTION OF THE CASE:</u>

      1.1    Plaintiffs are representative members of the Class, as well as consumers, members and lawful owners of timeshares (or "vacation ownership") of Meliá Hotels International (hereinafter "**Meliá International**"), through Sol Meliá Vacation Club Puerto Rico (hereinafter "**Sol Meliá**"), located at Hotel Gran Meliá, Río Grande, Puerto Rico.

1.2    Pursuant to its Statement of Legislative Intent, the Law on Timeshares of Puerto Rico Act No. 204-2016, as amended, (hereinafter "**Law No. 204**") was passed with "the aim to **protect** the purchaser of timeshares and to eliminate deceitful and aggressive practices by implementing certain measures such as the prior disclosure of all the **details of the transaction** to the seller and the prohibition to make advance payments for the transfer of timeshares".  This Law further aims:

> "to bring the regulatory system governing  timeshares  up to date so as to adjust its provisions to  the reality of the industry and (...)  to continue the development of this industry, ensuring  the protection of Puerto Rican consumers' rights  and of those individuals acquiring goods located in  Puerto Rico."

(Emphasis added).

1.3    Sol Meliá was established by Meliá International in or about 2004 with the purpose of entering the Puerto Rico market, offering consumers (the Plaintiffs herein) the possibility to purchase timeshares as part of "*Meliá's experience and mark*" for a term of 50 years, and thus enjoy the prestige of Melia's exclusive international vacation network, among other additional benefits.

1.4    In or about 2019, Meliá International, individually, together with and through Sol Meliá, sold Hotel Meliá to Coco Beach, subsequently transferred the memberships acquired by consumers under the Meliá Mark to Coco Beach, and thus defrauded the confidence of the class members, as they were fully deprived of the benefits agreed upon, such as their membership under the Meliá Mark and their access to Meliá's international vacation network for a term of 50 years.

1.5     Therefore, Meliá International and Sol Meliá breached Law 204, acted against their own prior acts, breached the contractual obligations undertaken with the class members and violated the *bona fide* principle on which our whole civil legal system is based.

1.6     This claim is brought pursuant to the provisions of Law No. 118 passed on June 25, 1971, Section 3341 of the 32 LPRA as amended, (hereinafter "**Law 118**"), which lays down the right of consumers of goods and services to bring class actions in order to claim damages arising from a breach of contract, such as the breach of contract referred to herein.

> For the Commonwealth of Puerto Rico, the protection of consumers of goods and services is of the highest public interest.  To such end, laws have been passed to safeguard the rights of citizens who claim their rights upon any breach of contract incurred by private providers.  Law No. 118, passed on June 25, 1971, lays down the right of consumers of goods and services to bring class actions against such providers.  This is a *sui géneris* legal course of action additional to other causes of action that may arise under this law.  The Statement of Legislative Intent of Law No. 118 clearly evidences the importance of its existence so as to protect consumers from willful misconduct.

> When a group affected by a common situation decides to jointly claim their rights, class actions are the best option if compared to any other available proceedings, to successfully and fairly settle the controversy.  Class actions are usually costly and complex, especially for plaintiffs.  The ultimate purpose of class actions is for courts of competent jurisdiction to attribute liability. Having to resort to administrative agencies cause already lengthy and complex class actions to become even more burdensome.  Joining various consumers' actions helps safeguard consumers' rights through a fair, effective and economic proceeding, and also helps promote a proper and effective rendering of justice.

Statement of Legislative Intent of Law No. 269-2002.

1.7     We hereby request this Honorable Court as follows:

(i)     That a **Declaratory Judgment** be entered providing that, due to the sale of timeshares entered into by and between Sol Meliá and Coco Condominium 1 LLC (hereinafter "**Coco Beach**"), Meliá International, individually, and together with Sol Meliá,

breached their contractual obligations undertaken with the class members by cancelling their timeshare membership, which had been purchased relying on the prestige of the Meliá mark and on the benefit of belonging to that international vacation network for a term of 50 years.

(ii)    That, pursuant to Law 118, 32 LPRA, Section 3343, a **Statutory Injunction** be issued ordering Defendants to discontinue the collection of maintenance fees, that during the pendency of this proceeding, notices of default in connection with maintenance fees not be given, and that the money invested by the class members be reimbursed as remedy.

(iii)    That, in the alternative, pursuant to Law 118, 32 LPRA, Section 3341, a **Preliminary and Permanent Injunction under Rule 57** ordering the same prohibitions stated in paragraph 1.7 (ii) above be issued.

(iv)    That, as a remedy, the reimbursement of the amount invested be ordered and that the Court orders that Plaintiffs recover damages in the amount of money invested in the purchase of the timeshares, the maintenance fees paid while Hotel Meliá was closed after Hurricane María, together with any interest and attorney's fees due to the breach of contract and the violation of the *bona fide* principle incurred by Defendants.

## II. <u>VENUE AND JURISDICTION</u>:

2.1    Pursuant to Law 118, this Court has jurisdiction over the subject-matter of this case and it is not necessary to firstly exhaust other available administrative means.  In what is relevant for this case, such law provides that this Court has "original and exclusive jurisdiction over class actions brought under this chapter, and it is not necessary to previously exhaust other available administrative means, if any."  32 LPRA Section 3343.

2.2     As to the jurisdiction of the Superior Division of Fajardo, we hereby state that Co-Defendants Sol Meliá and Coco Beach have been organized under the laws of the Commonwealth of Puerto Rico, that they have their main offices in Río Grande and San Juan, respectively, and that the core timeshare of Defendants is located in Río Grande, Puerto Rico.

2.3     Most importantly, the Judicial Circuit of Fajardo has jurisdiction over this case, since all acts carried out in connection with the offer and execution of the timeshare agreements subject of this Class Action occurred in Río Grande, Puerto Rico, which belongs to the Judicial Circuit of Fajardo.

### III.  **THE PARTIES**:

A.     Plaintiffs:

3.1     Plaintiff Adriana Avilés, of age, married, retired and a resident of the State of New York, United States, who represents all Sol Meliá members, whose contracts entered into under the Meliá mark were breached as a result of the sale of the Hotel Meliá to Coco Beach.  Her personal and home address is 248-09, Thornhill Ave., Douglaston NY, USA, 11362.

3.2     Plaintiff Isaac Serrano-Muñiz, of age, married, employee and a resident of Guaynabo, Puerto Rico, who represents all Sol Meliá members, class members, whose contracts entered into under the Meliá mark were breached as a result of the sale of the Hotel Meliá to Coco Beach.  His postal and home address is Urb. Terrazas de Guaynabo, Calle Jazmín E-18, Guaynabo, PR  00969.

3.3     Plaintiff James A. Harnar, of age, married retired and a resident of the State of Maine, United States, who represents all Sol Meliá members, whose contracts entered into

under the Meliá mark were breached as a result of the sale of the Hotel Meliá to Coco Beach.

His postal and home address is 18 Ocean Street 14-3, South Portland, Maine, USA 04106.

    3.4    Plaintiff John A. Napoli-Romero, of age, married and a resident of San Juan,

Puerto Rico, who represents all Sol Meliá members, class members, whose contracts entered

into under the Meliá mark were breached as a result of the sale of the Hotel Meliá to Coco

Beach.  His postal and home address is Urb. Paseo Mayor B22, Calle 2, San Juan, PR  00926.

    3.5    Plaintiff Mr. Goar Blanco, attorney, of age, married and a resident of San Juan,

Puerto Rico, who represents all Sol Meliá members, class members, whose contracts entered

into under the Meliá mark were breached as a result of the sale of the Hotel Meliá to Coco

Beach.  His postal and home address is Urb. Paseo Las Vistas, Calle 1 A1, San Juan, PR  00926.

    3.6    Any and all of the representative Plaintiffs represent the class as defined

below:

> As of March 31, 2019, the class is comprised of 2179 individuals, excluding foreigners, (2232 minus 53 foreigners = 2179) and 739 individuals who are residents of one or more of the fifty states of the Union, plus 1440 individuals who are residents of Puerto Rico, and who had bought a 50-year bi-annual or annual membership with the Meliá brand, and whose international benefits were canceled as a result of the sale of Hotel Meliá Puerto Rico to Coco Beach.

> The class does not include any foreign residents of any foreign nation.  The class does not include employees or former employees of Club Meliá, their affiliates, directors or officers, the judges of the Puerto Rico General Court of Justice, or the attorneys of the parties.

B.    <u>Defendants</u>:

    3.7    Defendant **SOL MELIÁ V.C. PUERTO RICO CORP.** ("Sol Meliá") is a private

corporation established by Meliá Internacional with main offices in Río Grande, Puerto Rico,

organized under the Commonwealth of Puerto Rico, which, among other activities, is

engaged in the sale of timeshares and provision of services in connection therewith in Hotel

Meliá, Puerto Rico.  Defendant is liable for the breach of the timeshare contracts in detriment of the rights of the class members.

3.8    Defendant **COCO CONDOMINIUM 1, LLC** ("Coco Beach") is a private corporation with main offices in San Juan, Puerto Rico, incorporated in November 2018 *only* to enter the timeshare sales and related services industry.  Defendant is liable as a corporation, in connection with the purchase of assets, interest and memberships owned by Sol Meliá in or about April 2019.  As a successor corporation, it is further jointly and severally liable for the obligations incurred and acts performed by Sol Meliá and Meliá International.

3.9    Defendant **MELIÁ HOTELS INTERNATIONAL, S.A.** ("Meliá International") is the parent company of and/or main shareholder of Sol Meliá, with main offices in Spain, which, either directly or through its agent, owns real property in Río Grade, Puerto Rico, issued in business transactions related to the hotel and timeshare industry.  Meliá International is directly, jointly and severally liable for all the facts stated herein and for having authorized the sale of Hotel Meliá, in detriment of Plaintiffs' rights.

## IV.  <u>FACTS</u>:

4.1    Each and every allegation included in the preceding paragraphs of this Amended Class Action Complaint is hereby reproduced, confirmed and incorporated by reference thereto.

4.2    Sol Meliá was created by Meliá International with the purpose of entering the timeshare market in Río Grande, Puerto Rico, in or around 2004.

4.3    Furthermore, Meliá International created, authorized, carried out and supervised the sale of the Hotel Meliá Vacation Club to Coco Beach to the detriment of its clients or consumers, the Plaintiffs of this action.

4.4    Meliá International, as main shareholder of Sol Meliá, agreed to provide financial assistance in case of disputes like the one in the instant case.

4.5    Meliá International controls the finance, policies, practices and decisions of its subsidiary, Sol Meliá, including the sale of the vacation club subject matter of this Class Action to Coco Beach.

4.6    Sol Meliá only operates to extend the life and in the benefit of its parent company as a business tool to carry out the sale of the timeshares in Puerto Rico, where all the proceeds are eventually collected by Meliá International, *i.e.*, Meliá International is the final beneficiary of the actions of Sol Meliá.

4.7    Meliá International incorporated Sol Meliá in Puerto Rico and obtained its certification by the Department of Tourism of Puerto Rico as an entity authorized to provide timeshares services in Puerto Rico.

4.8    Sol Meliá offered and promoted timeshare packages using its hotel as "home base", which was, back then, the Paradisus Hotel in Río Grande, Puerto Rico.

4.9    The vacation product that Sol Meliá promoted among the class members consisted in: 1) that Hotel Meliá would be its "home base" hotel; 2) that the class members would enjoy the Meliá brand and its exclusive exchange network around the world; and 3) that the class members would enjoy the whole "Meliá experience" during 50 years.

4.10    The class members relied on the fidelity of the word given and the offers made by defendant and therefore paid money and acquired their timeshare membership under the premises mentioned above.

4.11    Meliá is an international network with more than 30,000 members distributed among all its "home base" hotels around the world.

4.12    The class members paid the maintenance fees of their "home base" Hotel Meliá and the exchange program annually in exchange for the enjoyment of both said facilities and all the benefits offered by Meliá brand around the world for a term of 50 years.

4.13    In exchange for money paid, the class members could enjoy their timeshare, not only in their "home base", but in any part of the world where there was a Meliá club.

4.14    This exchange network allowed the class members to go on vacation around the world in Meliá Hotels and affiliates, among other things. This was admitted and acknowledged by defendant in its website:

> "Through the Club Melia Network, members HOME Resort purchase is backed up and converted to a currency called Options. With Options, members can break their vacation time into smaller trips, or add time together for an expanded vacation, as well as to access additional vacations resorts, and products such as additional worldwide resorts, and products such as additional worldwide resorts, cruises, car rental, airfare and other travel services. **Through the Club Melia Network, members can have access: Other Club Melia HOME RESORTS, a group of high demand destinations called the "Resort & Urban Collection", the more than 350 Melia Hotels & Resorts, over 4,000 affiliated vacations resorts worldwide, and additional Network Partners travel opportunities such as cruises."**

(Emphasis added).

4.15    The class members to spend their "vacation time" only with the Meliá brand, due to the abovementioned communications and representations. That is to say, the class members relied upon the representations made by defendants that, in exchange for the money paid, they would be able to enjoy the Hotel Meliá "home base", as well as the international exchange network of the Meliá brand for a term of 50 years.

4.16    When Sol Meliá sold the timeshares, it gave the class members adhesion contracts entitled Vacation Purchas Agreement ("VPA"), Network Services Agreement ("NSA") and Acknowledgements & Understandings ("A&U"), all of which were subscribed by

the class members. Besides, Sol Meliá gave them a package of promotional flyers about all the opportunities that the class members could enjoy and use under the Meliá membership and its exclusive exchange program. Together, they make up the agreement that governed the relationship between the parties.

4.17    The contract was the investment of money by the class members in exchange for the acquisition of the Meliá experience and its exclusive exchange network for a term of 50 year, as represented and offered by defendant.

4.18    The VPA is the agreement relating to the "home base", i.e. Hotel Meliá in Puerto Rico. The NSA is the agreement that allows class members to enter Meliá's exclusive exchange network around the world. The A&U is the agreement whereby Meliá represented to the class members all the benefits that they would receive and their obligations they would have when purchasing the timeshare.

4.19    The VPA states the following as regard the term of the agreement:

> **FOURTH. TERM OF AGREEMENT**. Unless previously terminated as more particularly set forth herein, **the AGREEMENT shall expire upon the earlier of (a) the end of fifty (50) USE YEARS from the date when Member is entitled to the first Use Period of the Unit, or (b) the end of fifty (50) USE PERIODS, or the end of TWENTY-FIVE (25) USE PERIODS if Member has acquired alternat-year rights**; consequently, MEMBER expressly recognizes that he or she shall not have any right whatsoever to use or enjoy the Units, or areas of the Home Resort, beyond the aforementioned term expiration.

(Emphasis added).

4.20    The A&U states the following in its relevant parts:

"The undersigned buyers have this day entered into a Vacation Purchase Agreement for vacation lodging services with Service Provider. In connection with said purchase, and to ensure member satisfaction, **buyer's acknowledges that the items below have been fully disclosed and explained**. (*Please initial each line*).

1. **We understand** that we purchased the following vacation club interests in the Sol Melia Vacation Club at Gran Melia P.R.

...

3. **We understand** <u>that our purchase</u> **includes an affiliation to a internal exchange system with the name So Melia Vacation Network (SMVN), through which we will have access to a Collection of Resorts, MaS Program, Network Partners, External Exchange Program, and other services.**
...

5. We understand that the term of our Membership is for 50 years (25 years for alternative year, if applicable) from our first use year.
...

(Emphasis added).

4.21    After the strike of Hurricane María, Hotel Meliá stayed closed. In fact, it never resumed operations under the Meliá flag. Still, Meliá continued to charge all the maintenance fees to the class members.

4.22    In or around April 2019, the class members were given surprise notice that Hotel Meliá had been sold to Coco Beach. This sale stripped them of the purchased benefit subject matter of this class action, i.e. the enjoyment of the experience and prestige of the Meliá brand, the enjoyment of the Hotel Meliá "home base" and the access to all the clubs and affiliates of Meliá around the world for a term of 50 years.

4.23    Since the class members were dissatisfied with the sale to Coco Beach, on July 3, 2019, Sol Meliá admitted that, in fact, it had unilaterally extinguished the benefits paid by the class members:

"The term of the purchase and sale agreement with the new owner establishes the new owner's obligation to fully comply with all contractual oblgations towards the Club Melia members contained in their respective contracts," "Since the new owner is not part of Melia Hotels International, the vacation club will not be affiliated with the Melia Vacation Network."

 (Emphasis added).

4.24    This is clear evidence of a violation of Law 24 by co-defendants, who also breached their contractual obligations and violated the principle of good faith in contracts, by breaking the class members' trust in Meliá and unilaterally extinguishing the benefits hired.

## V.  DEFINITIONS AND ADMISSIBILITY OF THE CLASS ACTION:

5.1    This Class Action is filed by the Plaintiffs mentioned in the caption of this case, appearing in person and representing other members of Meliá International through Sol Meliá, who, together with such Plaintiffs, form a "Class", as defined in section 3.6 above, in accordance with the provisions of Law 118 and Rule 20 of the Rules of Civil Procedure, 32 LPRA, subsection V, rule 20.

5.2    There are 2179 members of the Class Action in similar circumstances throughout the fifty states of the Union and Puerto Rico. Therefore, it would be impractical (if not impossible) to name them all, one by one, and add them all as Plaintiffs herein, since they are spread throughout multiple jurisdictions and countries.

5.3    This case presents some common, typical and evident issues of fact and of law, which apply to all the members of the Class Action. The claims contained herein arises as a result of the sale of the Meliá hotel to Coco Beach and the subsequent unilateral cancelation of the benefits hired by the Class Action members from Meliá.

5.4    All of the common **issues of fact and of law** mentioned above affect the Plaintiffs and the other members of the Class Action; therefore, the requirement for **commonality** -mentioned as necessary in Rule 20.1 stated above and in Law 118 for eligibility as a class action- is met. In addition, these issues prevail over others that separately

affect the Plaintiffs and other members of the Class Action. It is clear that this action is the appropriate and best option available to settle this dispute.[1]

5.5    The requirement for **numerosity** needed for eligibility as a class action made up for over 2,000 members is also met. It is not necessary to prove that it is impossible to consolidate all the claims of individual Plaintiffs. It is enough to show that such consolidations would entail serious obstacles to hear this case, as it is evident herein. Additionally:

a. The members of the Class Action are spread out throughout the fifty states of the Union and Puerto Rico.

b. It is extremely difficult to identify every member of the Class Action at this time.

c. The nature of this case allows for common allegations to be made, which prevail over the detail applicable to the members of the Class Action individually.

d. The cost of an individual action of this kind would be quite substantial for most of the members of the Class Action, and such costs would undermine the ability of each member to enforce their rights individually.

5.6    The claim has legal identity given that there is no conflicting interests among the Plaintiffs and the other Class members, or between any of them. Their aim is to recover their initial investments and the maintenance fees paid after Hurricane María due to Defendant's breach of contract, plus damages.

---

[1] *Juarbe v. Vaquería Tres Monjitas*, 169 D.P.R. 705 (2006).

5.7    The requirement of **adequate representation** is also met, given that:

a. There is no conflict between the interest of the absent members and the Plaintiffs representing the Class, since the claims included in the complaint apply to the whole Class; and

b. The Plaintiffs mentioned in the caption of this case and their attorneys shall argue this chase aggressively, competently and vigorously. The undersigned attorneys are vastly experienced in this kind of Class action and shall act in the best interest of each and every one of the Class members, as well as in furtherance of justice.

5.8    Furthermore, the requirements imposed by Rule 20.2(a) and (b) of the Rules of Civil Procedure, 32 LPRA Ap. V, R. 20.2 (a)-(b), are also met due to the following reasons:

a. The existence of separate actions of or against individual Class members would create a risk of (i) inconsistent or varied judgment with respect to the individual class members, which might establish incompatible rules of conduct for the party in opposition to the class; or (ii) judgments with respect to individual class members who, for all practical purposes, would have the interests of the other members who are parties to the particular judgment or who would worsen or substantially hinder their ability to protect their interest;

b. As stated above, the issues of law common to the Class members prevail over any questions affecting only individual members and the class action is the best option available for the fair and efficient settlement of this case, taking into account (1) the interest of the Class members in individually controlling

the handling or defense of separate actions; (2) the fact that there is no other litigation in relation to the dispute that has already been initiated by or against the Class members; (3) the desire to consolidate the resolution of the claims in this Honorable Court; and (4) the fact that trying this action as a class action does not entail any substantial difficulties.

5.9    Likewise, a Class action constitute the suitable mechanism, and the **best option if compared to any other method** to conduct this claim.

5.10    The elements of Law 118 to determine that the class action is the best option available are also present. To wit, section 3344 states that: 1) there is a common issue of fact or of law; 2) the class action is the best option available for the fair and efficient settlement of the dispute.

5.11    To that end, Law 118 mentioned above apart from dealing with the limited legal tools available to consumers and recognizing the difficulty inherent in claiming small amounts of money to big business, intended to extend the scope of Rule 20 mentioned above to authorize consumers to directly resort to the Court to vindicate their rights without the need of restoring to a governmental agency for help.

> Unfortunately, the remedies available to consumers to enforce their rights are still inadequate and the protection offered to the consumer by the Administration of Consumer Services... does not suffice... Therefore, it is reasonable to allow a direct action by consumers in such cases...
> ...
> Generally consumers' actions involve amount of money that are so low that do not justify the filing of an individual claim; it is cheaper and fairer that when claims are essentially alike they are brought in a single class action on behalf of all defrauded or deceived consumers... This kind of action compensates for the impracticability of an individual consumer litigating for small amounts of money, allowing one or more class representative suffering a same loss to bring an action on behalf of the whole class...
> They are obliged to not only consider the direct economic loss of the class action, but also the recognition and reaction of society therefore losing time, and suffering a

detrimental impact on prestige and personal name. In furtherance of discouraging the improper and deceitful conduct of goods and services providers against consumers, the Legislative Assembly of Puerto Rico considers it essentially necessary to make the class action available for consumers. Id. Page 384.

Statement of Legislative Intent of Law No. 118. See also *Juarbe v. Vaquería*, *supra*, page 720-721.

## VI.   <u>FIRST CAUSE OF ACTION</u>:
**(DECLARATORY JUDGMENT ON THE VIOLATION OF LAW 204, BREACH OF CONTRACT AND INFRIDGEMENT OF THE PRINCIPLE OF CONTRACTUAL GOOD FAITH BY CO-DEFENDANTS)**

6.1     Each and all allegations included in the above paragraphs of the Class Action are hereby reproduce, reaffirmed and incorporated by reference.

6.2     The unilateral cancelation of the benefits acquired by the class members under the Meliá was contrary to the agreement of the parties, since it was represented to said class members that they would enjoy the membership brought and the Meliá exchange network for 50 years.

6.3     Therefore, the issues of facts of this action constitute a clear violation of Law 204, a breach of contract and an infringement of the principle of contractual good faith by co-defendants. It is hereby requested to this Court to hold that said violation exist.

6.4     As regards the performance of contracts and the principle of good faith, the Supreme Court has held that: As from the moment the contract is perfected, it becomes binding "not only with respect to what has been expressly agreed, but also with respect to the consequences that, according to its nature, are consistent with good faith, usage and the law".

6.5    Law 204 demands companies such as **Defendants to disclose all core issues for their contracts in a conspicuous[2], transparent and efficient manner, consistently with contractual good faith**, so that consumers can express their consent free of any defect when purchasing the timeshare. <u>See</u> Statement of Legislative Intent, Law 204.

6.6    Law 204 sets that all documents presented by the company shall *fully and precisely* disclose all material characteristics of the timeshare plan. <u>See</u> *Section 5-102*. In particular, it shall precisely establish the "term of duration of the rights of the timeshare owners".

> **Representing to a potential buyer of a timeshare that the term of duration of said timeshare is longer than** the shortest of the following: (i) the term of availability for use and occupation of the place which is part of the project or the accommodations existing therein where said buyer has a timeshare; or (ii) **the term of duration of the timeshare plan**, shall be deemed to be a violation of this chapter. The developer shall also disclose the term of availability of each place within the timeshare plan. Section 5-102(4).

6.7    Section 5-102 *(16)* on disclosure to potential buyers sets forth that any other information requested by the Company must be disclosed in order to achieve *a complete and reasonable* disclosure to potential buyers of the timeshare plan. (Emphasis added).

6.8    Moreover, Section 7-102(6), (8) and (9) establishes that no offer of a timeshare plan may make an incorrect or deceiving representation on: 1) the… scope, extension, term of availability,… of the incidental benefits or places belonging to a timeshare plan; 2) the content… of the rights and interests, privileges, benefits or obligations of buyers or owners pursuant to the terms and conditions or their sales agreements or of this chapter;

---

[2] *Pursuant to Law 204 Section 1-104(45)*, conspicuous implies that the font shall be at least two points bigger than the biggest font of the page where it appears, without considering the head of the page but under no circumstances shall it be inferior to the (10) points.

and 3) the conditions under which an owner may participate in an exchange program. (Emphasis added).

6.9     Likewise, *Section 8-101(6) and (11)* sets forth that the potential buyer must be given a complete and precise description about: 1) the terms and conditions of a contractual relationship between the buyer and the exchange program; 2) **whether any right may be altered by the exchange company and the circumstances under which such alterations may occur**. (Emphasis added).

6.10    The sale of the Meliá Hotel and the subsequent unilateral cancelation of the agreed benefits, to the detriment of the class members constituted a clear violation of the provisions of Law 204 mentioned above and the principles of contractual good faith. That is to say, defendants deceived class members by promising them a series of benefits under the Meliá brand which were later on unilaterally canceled.

6.11    In the contractual relationship between Class members and Defendant, as in any other contractual relationship, there is a fundamental obligation to act both in good faith and in accordance with the law, which has been violated by co-defendants.

6.12    The duty to act in good faith is a guiding tenet in any legal relationship and consists in the loyalty in dealing with somebody, behaving honorably and loyally. It implies keeping one's word and not breaking nor abusing someone's trust as well as acting as it can be expected from those who, thinking in an honorable manner, participate as contracting parties".[3]

---

[3] *Berrios v. Universidad de Puerto Rico*, 116 D.P.R. 88 (1985); *Producciones Tommy Muñiz v. COPAN*, 113 D.P.R. 517 (1982). *Velilla v. Pueblo Supermarkets, Inc.*, 111 D.P.R. 585 (1981); *International General Electric v. Concrete Builders*, 104 D.P.R. 871 (1976).

6.13    The Supreme Court of Puerto Rico has held that "the **good faith** requirement is of the essence and, as such, it extends to our entire legal system. 'The ethical nature of each act shall be examined in the light of the particular circumstances, but behaving in accordance with the principle of **good faith** is a general tenet that is present in all legal relationships'."[4]

6.14    Defendants' conduct caused serious damages to Class members, consisting in the loss of the product bought and any other remedy that may be available at law.

**NOW, THEREFORE**, it is hereby requested in the first cause of action that a Declaratory Judgment be issued in order to determine that c-defendants violated Law 204, breached the contracts entered into with class members and violated the principle of contractual good faith and, consequently, they are liable for the damages arising from said unlawful conduct, consisting in the economic loss of the product and any other remedy that may be available at law.

## VII.    SECOND CAUSE OF ATION:
### (STATUTORY INJUNCTION under Law 118)

7.1    Plaintiffs reaffirm and incorporate by reference to this section all prior allegation herein.

7.2    To this day, Coco Beach continues to unlawfully charge maintenance fees to class members, and therefore it is hereby requested that the Court issues a prohibitory injunction preventing Coco Beach from prospectively collecting said fees.

7.3    As abovementioned, class members did not hire the benefits of Coco Beach brand. They solely and exclusively hired the Hotel Meliá benefits, with all the significance

---

[4] *Catalytic Ind. Maint. Co. v. F.S.E.*, 121 D.P.R. 98, 113 (1988).

and reach of prestigious brand Meliá and the access to its different clubs throughout the world.

7.4     Since said agreement was unilaterally cancelled by Sol Meliá and Meliá International, the payment of a maintenance fee to Coco Beach by class members for a benefit they no longer receive is inadmissible.

7.5     Law 118, 32 LPRA section 3343 sets forth that this Court "shall be vested with the power to prevent, avoid, stop and punish actions detrimental to consumers and/or traders, irrespective the amount involved and, during the proceedings, prior to final judgment, the Court may issue **restrictive and prohibitory injunctions**, as it may deem fair and equitable with respect to the conduct that motivated the action."

7.6     To that end, in accordance with the applicable provisions of Rule 20 stated above, and of Law 118, Plaintiffs request that Coco Beach be ordered to immediately cease collection attempts of maintenance fees during the pendency of this suit.

**NOW, THEREFORE**, it is hereby requested in this second cause of action that, pursuant to Law 118, section 3343, and Rule 20.2 (b) of Civil Procedure, the Court order Coco Beach the immediate cessation of any collection attempt of maintenance fees during the pendency of this suit.

## VIII.  THIRD CAUSE OF ACTION:
### (DAMAGES UNDER LAW 118)

8.1     All allegation included in the above paragraphs of this Class Action are hereby reproduced, reaffirmed and incorporated by reference.

8.2     As a result of the violation of Law 204, the breach of contract and the infringement of the principle of contractual good faith, CO-Defendants have enriched

themselves to the expense of Plaintiffs in no less than USD 75,000,000,[5] resulting from the money investments paid by class members to Defendants for the purchase of the timeshare Meliá with its exchange network, which shall have to be returned in full.

8.3    Likewise, Co-Defendants Sol Meliá and Meliá International continued to charge maintenance fees, representing that they would reopen soon, after Hurricane María, something that never happened.

8.4    Later on, Co-Defendant Coco Beach continued charging maintenance fees, despite the fact that the benefits of class members agreed upon with Meliá were unilaterally canceled.

8.5    Therefore, we hereby request that the payment of the maintenance fees corresponding to the years 2017 to 2019 be reimbursed and until judgement is rendered on the whole merits of the case.

8.6    Section 3 of the Law on Class Actions, 32 LPRA section 3343 sets forth in its relevant part that the Court shall impose in its ruling or judgment and amount **equal** to the liquidated damages, which in the instant case is of no less than USD 75,000,000.00 for damages, resulting in USD **150,000,000.00** plus a reasonable amount for attorney's fees, as well as legal interest as form the damage was caused and costs and expenses of suit.

**NOW, THEREFORE**, it is hereby requested in this third cause of action that Co-Defendants be ordered to pay damages in an amount not inferior to USD 150,000,000.00 and to reimburse the sum collected as maintenance fees from 2017 to 2019, which shall continue

---

[5] *This number arises from the average of investments made by the members multiplied by two thousand. Said number is not an exact representation and it may considerably increase during discovery.*

to increase until judgment is entered, should Coco Beach continues to charge maintenance fees, with any other remedy available pursuant to law.

### IX.  FOURTH CAUSE OF ACTION:
### (ATTORNEYS' FEES AND PAYMENT OF INTEREST AND COSTS OF SUIT)

9.1    All allegations included in the above paragraphs of this Class Action are hereby reproduced, reaffirmed and incorporated by reference.

9.2    Pursuant to the abovementioned provisions, Plaintiffs request that this Court order Co-Defendants the payment of a reasonable amount as attorneys' fees, which shall be determined based on a percentage of the amount that may be granted as damages when appropriate.

9.3    Accordingly, Plaintiffs request that costs and expenses of suit be borne by Co-Defendants, as well as the accumulated interest as from the filing of this Complaint.

**NOW, THEREFORE**, in this fourth cause of action, Plaintiffs respectfully request that costs and expenses of suit and attorneys' fees corresponding to a Class Action and the corresponding interest accumulated as from the filing of this Complaint be awarded by the Court against Defendants.

### X.  PRAYER FOR RELIEF:

To summarize, the appearing party requests this Honorable Court that this Complaint be sustained and consequently:

i)    That the case be admitted as a class action as requested.

ii)    That a Prohibitory Injunction be issued under Law 118 ordering the Co-Defendant Coco Beach to cease the collection of maintenance fees.

iii)    That a Declaratory Judgment be issued declaring Defendants' violation of Law 204, breach of contract and infringement of the principle of contractual good faith to the detriment of Plaintiffs.

iv)    That the corresponding damages be granted, with the double penalty of Law 118. The preliminary estimate amount for damages is no less than USD 150,000,000.00.

v)    That the corresponding costs and expenses of suit and attorneys' fees, plus the corresponding interest calculated as from the day this Complaint is filed be awarded against Defendants;

vi)    That any other remedy available to Plaintiffs at law be accordingly granted.

**RESPECTFULLY SUBMITTED.**

**WE HEREBY CERTIFY** that on this day I electronically filed the foregoing motion with the Clerk of the Court using the CM / ECF, which will send a notification to counsel of record.

In San Juan, Puerto Rico, this 18th day of August, 2020.

**VICENTE & CUEBAS**
P.O. Box 11609
San Juan, PR 00910-1609
Phone     (787) 751-8000
Facsimile (787) 756-5250
Facsimile (787) 775-1672

**HERNANDEZ-OHARRIZ & SANTIAGO**
Centro Internacional de Mercadeo I
165 Carr.100 Suite 612
Guaynabo, P.R. 00968
Phone     (787) 378-5630

*s/Harold D. Vicente*
**Harold D. Vicente**
USDC-PR  117711
E-Mail: *hvicente@vclawpr.com*

*s/Edgardo J. Hernández-Ohárriz*
**Edgardo J. Hernández-Ohárriz**
USDC-PR 229304
E-Mail: *ehernandez@lawservicespr.com*

*s/Christian A. Nieves-Rodríguez*
**Christian A. Nieves-Rodríguez**
USDC-PR  307112
E-Mail: *cnieves@vclawpr.com*